WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Gerardo Romero Trinidad,

    Plaintiff,

v.

Andrew Saul,

    Defendant.

No. CV-19-00090-TUC-LCK

**ORDER**

Plaintiff Gerardo Trinidad filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Plaintiff's Opening Brief, Defendant's Responsive Brief, and Plaintiff's Reply. (Docs. 22, 25, 26.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 15.) Based on the pleadings and the administrative record, the decision of the Commissioner is affirmed.

## PROCEDURAL AND FACTUAL HISTORY

Trinidad was born in November 1963 and was almost 50 years of age at the onset date of his alleged disability. (AR 341.) He had past relevant work experience as an air conditioning technician. (AR 388.) Trinidad filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in February 2013. (Administrative Record (AR) 341, 345.) That month, he underwent a total left shoulder replacement. (AR 517.) He alleged disability from April 30, 2012 (AR 341), which he amended subsequently to October 1, 2013 (AR 57, 466, 487). Trinidad's application was denied upon initial

review (AR 141-58) and on reconsideration (AR 159-80). A hearing was held on July 29, 2015. (AR 51-111.) The ALJ then found Trinidad was not disabled. (AR 184-99.) The Appeals Council remanded the case for a supplemental hearing and directed the ALJ to assess whether Trinidad engaged in substantial gainful activity in 2014 and evaluate the expanded record. (AR 208-09.) A second hearing was held in front of a different ALJ on September 11, 2017. (AR 112-33.) Subsequently, the ALJ found that Trinidad was not disabled. (AR 29-38.) The Appeals Council denied Trinidad's request for review. (AR 13.)

The ALJ found that Trinidad had three severe impairments: osteoarthritis of the left shoulder status post total arthroplasty, carpal tunnel syndrome of the left upper extremity, and mild degenerative changes of the spine. (AR 27.) The ALJ determined Trinidad had the Residual Functional Capacity (RFC) to perform light work limited to frequent handling with the left hand; occasional reaching overhead on the left and climbing of ramps/stairs; and, no climbing of ladders/ropes/scaffolds. (AR 31.) The ALJ concluded at Step Five, based on the testimony of a vocational expert, that Trinidad could perform work available in the national economy such as usher and ticket taker. (AR 36.)

**STANDARD OF REVIEW**

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520; 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes him from performing his past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

**DISCUSSION**

Trinidad argues the ALJ committed two errors: (1) he failed to provide clear and convincing reasons for rejecting Trinidad's symptom testimony; and (2) he failed to properly weigh the opinion of treating physician Dr. Patricia Soliz.

**Trinidad's Symptom Testimony**

Trinidad argues the ALJ failed to provide clear and convincing reasons to reject his symptom testimony. In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court]

cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The ALJ found Trinidad had satisfied part one of the test by proving an impairment(s) that could produce the symptoms alleged. (AR 32.) Next, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). Here, the ALJ did not make a finding of malingering. Therefore, to support his discounting of Trinidad's assertions regarding the severity of his symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

In April 2013 (two months after a left shoulder replacement), Trinidad completed a Function Report, in which he stated that he was unable to lift more than fifteen pounds with his left arm and could not rotate or fully extend that arm. (AR 405, 406.) He was able to drive his son to school, perform light household chores, care for his dog, and perform personal care with his right arm. (AR 406.) He went shopping two to four times a month, watched television, read books, attended sporting events for his son and grandchildren, and socialized with family and friends monthly. (AR 409.) He stated that he took oxycodone and Ibuprofen for his impairments. (AR 412.)

In June 2013, Trinidad reported that he had lost almost all mobility in his left arm, and that over-use of his right hand was causing pain and cramping. (AR 417.) He stated his pain was severe and would interrupt his sleep, and that he would lose his balance while walking or become dizzy if he moved quickly. (*Id.*)

In an October 2013 Function Report, Trinidad reported a worsening of function in his left arm that precluded extending it past his shoulder or reaching to grab objects. (AR 421.) He stated that if he used his left arm while standing, it triggered severe back pain. (*Id.*) Trinidad indicated he was not doing any household chores due to lack of strength in his left arm. (AR 423-24.) He stated that he watched television, attended church and sporting events, and occasionally went to the movies. (AR 425.) Trinidad listed substantially greater limitations at this time, including pain on squatting or bending, and lack of balance on standing. (AR 426.) He also noted that shoulder pain inhibited his ability to pay attention. (*Id.*)

At the 2015 hearing, Trinidad testified that he could no longer perform his past work, not even by compensating with his right hand, had developed anxiety and depression, and had been diagnosed with diabetes. (AR 63.) During the day, Trinidad stated that he helped monitor his grandkids (with his wife), watched television, and read magazines or mail. (AR 77-79.) He did not do yardwork but would assist his wife with dishes. (AR 79.) He reported driving up to four times a week to run errands. (AR 69.) Trinidad stated that he was diagnosed with depression in late 2013, and his primary care doctor prescribed medication. (AR 80.) He had become forgetful, anxious, and moody. (AR 82-83.) He also reported low back pain, restless legs, stiffness in his right shoulder, and numbness in his left fingers. (AR 88-90.) He described needing to shift around frequently or alternate with standing when sitting for more than fifteen minutes; he opined that he could stand for approximately an hour. (AR 91-92.)

He stated that he was limited to lifting forty pounds with his right arm and ten pounds with his left, but also stated that he could not lift an eight-pound gallon of milk with his left arm. (AR 64, 65.) He tried not to use his left arm because he would suffer

afterwards. (AR 64.) He reported that two to four times per day, he experienced shoulder pain at an eight out of ten while taking ibuprofen. (AR 66, 70-71.) Trinidad stated that he could not extend his left shoulder forward, overhead, or laterally. (AR 67.) Trinidad noted that he was to schedule carpal tunnel surgery soon for his left arm. (AR 68, 73-74.) He identified left wrist pain at the level of a ten or eleven, and he was wearing a brace on it most of the time. (AR 75-76.)

At the 2017 hearing, Trinidad testified that he stopped working because he could not lift with his left hand. (AR 118.) He spent his days driving his wife to and from work and doing small jobs for his dad. (AR 124.) He indicated he was having surgery on both eyes due to limited peripheral vision and, also, would have carpal tunnel surgery in the next year or two (due to episodic finger numbness and a ganglion cyst). (AR 125.) Trinidad testified that his inability to work had become very depressing and it would overwhelm him, but he had not sought any treatment. (AR 118, 125, 130.)

The ALJ discounted Trinidad's symptom testimony because medical records indicated he continued to work, he was receiving only conservative treatment for his shoulder, he was taking no medication for his mental impairment, and his testimony was inconsistent with his activities of daily living and the objective medical evidence. (AR 32.)

First, the ALJ noted that Trinidad was continuing to work despite testifying that he had been unable to work since his alleged onset date of October 2013. Trinidad's earnings records reveal that he earned approximately $20,000 in 2013 and $16,000 in 2014. (AR 368.) In the disability report submitted with his application, Trinidad stated that he stopped working in November 2012. (AR 387.) He testified, in 2017, that he stopped working in October 2012, prior to his surgery (AR 118, 122), but, at the 2015 hearing, he had testified that he stopped working in October 2013 (AR 61). In 2017, he explained that he was self-employed from 2011 until October 2012 but, after that date, he continued to receive payments for prior jobs and commissions from giving work to a friend. (AR 120-22.)

The ALJ found Trinidad's testimony about his 2013 and 2014 earnings to be "vague and evasive." (AR 27.) He thought it unlikely that small jobs or prior commissions would

add up to $16,000 in 2014, or that Trinidad would receive commission payments a long time after work was completed. (*Id.*) Based on medical records that stated Trinidad was working in 2017, the ALJ believed he likely was working. (*Id.*) However, he concluded there was not reliable evidence of substantial gainful activity (SGA). (*Id.*)

In reviewing the medical records, the ALJ noted that, in November 2014, Trinidad cut his finger with a power saw working in his "plumbing business." (AR 641, 661.) In June 2017, Trinidad was discharged from physical therapy because he was too busy with his HVAC business to attend regularly. (AR 876.) The ALJ also relied upon medical records from 2017, which documented that Trinidad's shoulder was fatigued from working 40 or more hours per week, and that he was doing full-time work in his own HVAC business. (AR 869, 875.)

Trinidad argues that the ALJ offered no reason not to believe his testimony that he had not been working. To the contrary, the ALJ referenced numerous medical records that indicated Trinidad was working. And, there are several additional records documenting Trinidad's work. (AR 781 (April 2015); AR 790 (September 2015); AR 865 (February 2017); AR 877 (August 2017).) Trinidad further argues that the ALJ could not discount his symptom testimony based on engaging in work because the ALJ concluded Trinidad had not engaged in SGA since October 2013. A claimant could remain below the threshold for SGA and still earn more than $12,000 per year in 2013, and up to $14,000 in 2017. *See* https://www.ssa.gov/oact/cola/sga.html. The ALJ's Step One finding established only a lack of earnings above the SGA level for work after October 2013. That finding does not undermine the ALJ's determination that Trinidad's testimony – that he had not worked since October 2012 and was unable to perform any work – was inconsistent with the numerous records documenting his work activity in subsequent years. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (holding that ALJ may rely upon "ordinary techniques of credibility evaluation" such as inconsistencies with the claimant's testimony or "testimony by the claimant that appears less than candid") (quoting *Smolen*, 80 F.3d at 1284. The ALJ's reliance on Trinidad's continued work was a clear and

convincing reason, supported by substantial evidence, to discount his testimony that his symptoms prevented his performance of work.

Second, the ALJ cited the fact that Trinidad received only conservative treatment for his shoulder.[1] If a claimant obtains only conservative treatment and does not seek more aggressive treatment, that can provide a clear and convincing reason to discount his symptom testimony. *Tommasetti*, 533 F.3d at 1039-40; SSR 16-3p ("if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

Trinidad had his left shoulder replaced in February 2013 and began physical therapy that month. (AR 517, 567.) The record documents seven appointments running into April 2013. (AR 574, 571, 577, 579, 581, 584.) Two days after the last physical therapy record, his surgeon, Dr. Sheppard, noted that Trinidad had excellent pain relief but continued stiffness, and he prescribed an escalation in therapy. (AR 591.) However, there are no further physical therapy records until 2017. In May 2013, a primary care doctor noted that Trinidad was "performing usual activities." (AR 598.) In April 2014, Dr. Sheppard again documented satisfactory pain relief but referred Trinidad for formal strength therapy. (AR 635.) Again, there is no documentation of therapy at that time. At his January 2015 appointment with Dr. Sheppard, Trinidad reported excellent pain relief and significant function improvement. (AR 662.) In April 2016, Trinidad reported only intermittent performance of exercises, and Dr. Sheppard noted he had obtained no recent shoulder treatment. (AR 794.) The surgeon found the shoulder stable but noted Trinidad's report of functional diminishment and directed him to resume at-home exercises. (AR 794-95.) In January 2017, an orthopedist discussed Trinidad's symptoms with him and offered the possibility of a second surgery. (AR 803.) At Trinidad's request, the doctor referred him to

---

[1] The record summary in Plaintiff's brief included, from Trinidad's testimony, only information about his left-arm impairment and inability to lift with that arm. (Doc. 22 at 6-7.) Thus, the Court believes the ALJ's discounting of Trinidad's symptom testimony regarding his left arm is central to the Court's review of this claim.

physical therapy, noting that Trinidad did not believe his symptoms warranted surgery. (*Id.*) After attending six sessions, the physical therapist discharged him because his work schedule precluded him from attending regularly. (AR 876.) The therapist noted that Trinidad's strength was improved, and he had met his goals other than getting his pain level consistently below a two out of ten. (AR 875-76.)

Trinidad argues that the ALJ did not demonstrate that more aggressive treatment was available or that Trinidad failed to participate in available treatment. Actually, the ALJ noted that when a doctor offered the possibility of further shoulder surgery, Trinidad did not believe his symptoms warranted that level of treatment. (AR 33 (citing AR 803).) When Trinidad chose physical therapy rather than exploring surgery, the ALJ noted that Trinidad was discharged after a few sessions because he could not make time to attend. (*Id.* (citing AR 876).) Further, the record indicates that Dr. Sheppard recommended an escalation of physical therapy in 2013 (AR 591) and strength training in 2014 (AR 635), but no records indicate Trinidad engaged in that therapy. Also, in 2016, Trinidad reported diminished functioning and acknowledged he was intermittent with performing his home strengthening and stretching exercises. (AR 794.) The record shows that physical therapy in 2013 and 2017 was beneficial to decreasing pain and improving Trinidad's stiffness and range of motion. (AR 577, 581, 871, 873, 875-76.)

Trinidad provides no reason he did not actively engage in physical therapy or home exercise or consider surgery if his shoulder impairment precluded all work. *See Johnson v. Comm'r of Soc. Sec. Admin.*, No. CV-18-01230-PHX-DGC, 2019 WL 429887, at *7 (D. Ariz. Feb. 4, 2019) (holding that an ALJ "must consider 'any explanations that the individual may provide, or other information in the case record, that may explain' the claimant's failure to follow a treatment plan.") (quoting *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)). Nor did Trinidad point to any record evidence that explained his failure to seek or pursue more aggressive treatment, which would have triggered the ALJ to consider and address the evidence. *See Carmickle v. Comm., Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); SSR 16-3p; *Sperry v. Comm'r of Soc. Sec. Admin.*, No. CV-

18-01484-PHX-JAT, 2019 WL 1513203, at *7 (D. Ariz. Apr. 8, 2019) ("SSR 16-3p does not explicitly require the ALJ to ask the claimant at the hearing why he or she has failed to continue treatment. Rather, an ALJ may permissibly discount a claimant's testimony if a review of the record suggests that "[a]n individual's symptoms [were] not [ ] severe enough to prompt him or her to seek treatment[.]"").The Court found no record evidence of an explanation for Trinidad's failure to pursue treatment for his shoulder, such as a financial limitation or absence of effective treatment. *See Orn*, 495 F.3d at 638 (finding if claimant has an inability to pay or treatment is unlikely to provide relief then ALJ should not discount symptom testimony for lack of treatment) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Trinidad's failure to pursue more substantial treatment for his shoulder was a clear and convincing reason supported by substantial evidence to discount his symptom testimony that his shoulder impairment precluded all work.

Third, the ALJ relied on the fact that Trinidad was not taking any medication for his depression and anxiety. (AR 29, 35.) Trinidad's primary care doctor prescribed medication for depression beginning in April 2014. (AR 609-10.) The dose was increased in July 2016. (AR 799.) In October of that year, Trinidad reported stopping the medication and feeling the same, not depressed; his affect and mood were normal at the appointment. (AR 800-02.) As he acknowledged at the 2017 hearing, Trinidad did not seek treatment for his mental health. In evaluating his symptom testimony, the ALJ properly considered that Trinidad never sought mental health treatment, beyond his primary care physician, and stopped taking his medication without explanation. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (noting that an ALJ may discount symptom testimony based on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment") (quoting *Tommasetti*, 533 F.3d at 1039); SSR 16-3p (allowing an ALJ to consider failure to seek or follow treatment when there is no evidence to explain the claimant's actions).

Fourth, the ALJ also relied upon inconsistencies between Trinidad's testimony and the objective medical evidence. The primary basis Trinidad consistently alleged for his

inability to work was his left shoulder impairment. *See supra* note 1. The ALJ documented a left total shoulder arthroplasty in February 2013. (AR 517.) In all subsequent exams, his shoulder was stable with no hardware complications. (AR 524, 587, 590, 664, 669, 795, 817.) From surgery into 2016, Trinidad repeatedly noted significant pain relief. (AR 524, 579, 581, 584, 591, 635, 662, 794.) In January 2017, Trinidad reported his pain had been increasing. (AR 803.) It subsequently improved with physical therapy, although full relief was not achieved prior to the treatment ending due to Trinidad's inability to attend. (AR 868, 871, 873, 876.) Several records documented improved range of motion and function. (AR 508, 584, 635, 662, 876.)

With respect to carpal tunnel syndrome, the ALJ cited testing showing it was mild, or at most moderate. (AR 33 (citing AR 646, 796).) Although Trinidad testified that he would be having surgery for this condition, as the ALJ noted, the record does not document surgery as a recommended treatment at any time. With respect to Trinidad's lower back pain, the ALJ cited evidence showing normal cervical and thoracic spine with no tenderness (December 2011); degenerative disc disease without high-grade central stenosis or cord compression, and no cervical radiculopathy (March 2012); and mild degenerative changes of thoracic spine seen on x-ray performed to evaluate coughing (April 2014). (AR 33 (citing AR 502-03, 541, 675).) The Court identified only two medical records related to Trinidad's lower back. (AR 718 (pain on palpation), AR 799 (increased low back pain in the morning).) With respect to his vision, the ALJ found it would not pose more than a minimal limitation for greater than twelve months. (AR 28.) The records reveal blurry vision "at times" in late November 2016 (AR 800); and, subsequent treatment for droopy eyelids culminating in a November 2017 corrective surgery. (AR 830, 843, 848, 851.)

The Court finds that, overall, there is substantial evidence to support the ALJ's conclusion that the objective medical evidence was inconsistent with Trinidad's symptom testimony. Although there are records documenting functional limitations, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual

finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). There is substantial record evidence to support the ALJ's finding that the objective medical evidence did not support Trinidad's testimony of disabling symptoms. *See Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (quoting *Magallanes*, 881 F.2d at 750) ("[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."); *Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). Further, Plaintiff did not contest the ALJ's conclusion regarding objective findings. (*See* Doc. 22 at 15-19.) Trinidad is correct that the Court cannot reject symptom testimony solely on the basis of objective medical evidence. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282). However, the Court may consider inconsistencies with the medical evidence as one basis to discount a claimant's symptom testimony. *Id.* at 1040.

Finally, Trinidad argues that the ALJ's findings regarding his symptom testimony were inadequate because he relied on boilerplate language that the testimony was not "entirely consistent" with the record evidence; and, he did not link the medical evidence to specific symptom testimony. The ALJ's decision is not a model of clarity and he did employ meaningless boilerplate. However, he also laid out a discussion of the medical evidence as to Trinidad's non-severe impairments (AR 28-29), as well as severe impairments of left shoulder osteoarthritis, carpal tunnel, and disc disease (AR 32-33). And, as discussed above, the ALJ cited specific records to support his discounting of Trinidad's testimony based on evidence that he was working and sought and obtained only episodic conservative treatment for his shoulder. Therefore, the errors cited by Trinidad are, at most, harmless. *See Petty v. Colvin*, No. CV-12-02289-PHX-BSB, 2014 WL 1116992, at *8–9 (D. Ariz. Mar. 17, 2014).

The Court identified four valid grounds cited by the ALJ to find Trinidad's symptom testimony not fully credible. The Court finds they are supported by substantial evidence and satisfy the clear and convincing standard.

**Medical Opinion of Dr. Patricia Soliz**

Trinidad argues the ALJ erred in giving very little weight to treating physician Dr. Soliz, but giving some weight to examining physician Dr. Rothbaum, and non-examining physicians Drs. Holly and LMW. In July 2015, Dr. Soliz opined that symptoms would constantly interfere with Trinidad's concentration, he could sit and stand for only two hours each in a work day with shifting positions at will, needed two 30-minute breaks per hour, could only occasionally lift ten pounds, could grasp, manipulate, or reach only twenty percent of the time with his left arm, and would be absent from work for three days per month. (AR 718-22.)

The opinion of a treating physician is generally afforded more weight than a non-examining or reviewing physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). The opinion of Dr. Soliz was contradicted by that of examining physician Dr. Rothbaum, who found Trinidad could perform medium-exertion work with some limitations related to his left arm (AR 739-43), and reviewing physicians Drs. Holly and LMW, who found Trinidad could perform light-exertion work limited to occasional overhead reaching on the left. (AR 146-48, 166-68.) When there are contradictory medical opinions, to reject a treating physician's opinion, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Lester*, 81 F.3d at 830-31; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ stated that he gave little weight to Dr. Soliz's opinion because the day she completed the form was the only day she treated him, she acknowledged that her opinion as to the expected longevity of Trinidad's functional restrictions was based on his report, she stated in her exam records that she completed the paperwork based on Trinidad's subjective report to each question, and she spent her exam time on completing disability paperwork. (AR 34.)

First, Trinidad argues that Dr. Soliz's opinion was not limited to one visit because she reviewed his history "with another treating physician" and her opinion was based on "a holistic view of Trinidad's condition." (Doc. 22 at 11.) Although Trinidad had a multi-year history of treatment within the same medical system (Banner), neither Dr. Soliz's opinion nor her appointment notes indicate she reviewed those records. In her exam notes, Dr. Soliz acknowledged reviewing only Dr. Ricker's records, but she noted that Dr. Ricker, too, had only seen Trinidad one time. (AR 723.) Dr. Ricker saw Trinidad on November 5, 2014 (AR 636), and Dr. Soliz used that as the date on which Trinidad's limitations began (AR 718, 722). This fact further supports the Court's conclusion that Dr. Soliz reviewed only that singular record. Although Dr. Soliz's notation that she reviewed Trinidad with another doctor is not without ambiguity, it does not appear she actually discussed Trinidad's impairments or limitations with another physician. She stated that the review she conducted occurred on November 5, 2014 (Trinidad's appointment date with Dr. Ricker). If she had consulted with Dr. Ricker personally that would have occurred on July 22, 2015, because she received and completed the paperwork that day. (AR 723-24 (noting Trinidad needed paperwork urgently and it was completed during appointment).)

The November 5, 2014 examination notes upon which Dr. Soliz relied were from an appointment with Dr. Ricker to discuss ENT concerns and erectile dysfunction. (AR 635.) The physical exam was normal, with the exception of the ENT findings, which are not at issue in Trinidad's disability claim. (AR 636-37.) At that time, Trinidad did not raise any concerns about his shoulder, spine, carpal tunnel, depression, vision, or pain in any location other than his throat. (AR 635.) And, Dr. Ricker did not examine him relative to those issues nor document any impairments or treatment for those issues. (AR 635-37.) Thus, it appears that Dr. Soliz's opinion was not based on a longitudinal history but on her single visit and Trinidad's input. The *Holohan* case upon which Trinidad relies is inapposite. In that case, the doctor that offered a functional opinion noted she had reviewed the claimant's "file" from her prior doctor of two years, and the court agreed that the prior doctor's records supported the medical opinion offered. *Holohan v. Massanari*, 246 F.3d

1195, 1207 & n.10 (9th Cir. 2001). Here, Dr. Soliz did not review a lengthy medical file, and the singular medical record reviewed did not document limitations at the level included in Dr. Soliz's opinion.

Further, the ALJ noted that Dr. Soliz performed a short examination, which was normal other than Trinidad's shoulder abduction being limited to 160 degrees. (AR 723.) Dr. Soliz offered no treatment for any medical issues because the entire appointment was spent completing the disability paperwork. (*Id.*) The fact that Dr. Soliz did not review any records of relevance, her exam results were normal, she had no history of treating Trinidad, and she provided no medical treatment that day are specific, legitimate reasons to discount Dr. Soliz's opinion. *See Lester*, 81 F.3d at 833 (noting that the reason treating physician's opinions are of particular weight is because they have a continuing relationship with their patients and are uniquely positioned to synthesize input from other examining professionals to evaluate the patient's limitations and treatment); *Magallanes*, 881 F.2d at 751 (upholding an ALJ's rejection of a treating physician's opinion because only minimal clinical findings supported it) (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)).

Second, the ALJ discounted Dr. Soliz's opinion because it was based on Trinidad's subjective input. In her medical opinion, Dr. Soliz did not state as to each question that it was based on Trinidad's subjective reports. (AR 718-22.) However, she had only seen him one time and her exam was abbreviated; therefore, her highly restrictive opinion must have been based on Trinidad's reporting. The two objective findings she sighted were "pain on palpation to lower back," and "limited range of motion of left shoulder." (AR 718.) Her exam notes do not document a finding of back tenderness; limited shoulder abduction was noted, although 160 is close to full abduction of 180 degrees and considered within normal limits. (AR 723.) Regardless, in her examination record, she explicitly stated "form was filled out based on the patient's subjective report to each question." (AR 723.) Therefore, it was legitimate for the ALJ to find that Trinidad's input was the basis for the doctor's opinion. In light of the ALJ's legitimate discounting of Trinidad's symptom testimony, it

was a specific, legitimate reason to reject Dr. Soliz's opinion because it was premised on Trinidad's characterization of his symptoms. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Fair*, 885 F.2d at 605).

The ALJ's discounting of Dr. Soliz's opinion was supported by specific, legitimate reasons supported by substantial record evidence.

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). The Court concludes the ALJ did not err as to the claims raised by Plaintiff. Therefore, Plaintiff is not entitled to relief and the appeal is denied.

Accordingly, **IT IS ORDERED** that Plaintiff's case is **DISMISSED** and the Clerk of Court shall enter judgment.

Dated this 30th day of March, 2020.

Honorable Lynnette C. Kimmins
United States Magistrate Judge